```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ADAM BODDIE,                                                      :
                                                                  :
                                        Plaintiff,                :
                                                                  :         1:15-cv-4275-GHW
                        -v -                                      :
                                                                  :         MEMORANDUM OPINION
THE CITY OF NEW YORK, et al.,                                     :              AND ORDER
                                                                  :
                                        Defendants.               :
------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/13/2016

GREGORY H. WOODS, United States District Judge:

The City of New York (the "City"), New York Police Department ("NYPD") Officer Sean Casey, and NYPD Sergeant Evan Hodos, move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on plaintiff Adam Boddie's claim for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). For the reasons that follow, Defendants' motion is GRANTED and Plaintiff's *Monell* claim is dismissed.

## I. Background[1]

On March 25, 2015, Boddie was grilling across the street from his residence in the Bronx when he was approached by Officer Casey and Sergeant Hodos (together "NYPD Defendants"). SAC ¶¶ 5, 8. NYPD Defendants asked if Boddie was "the cook" and he confirmed that he was. *Id.* ¶¶ 8-9. Boddie also informed NYPD Defendants that earlier that day other NYPD officers had told him that he could grill at that location. *Id.* ¶ 9. NYPD Defendants nonetheless instructed Boddie to shut down the grill, which he did. *Id.* ¶¶ 11-12.

Boddie alleges that despite his compliance with this order, NYPD Defendants then grabbed him without warning, threw him against a car, and handcuffed him. *Id.* ¶¶ 12-13. They then

---

[1] Unless otherwise noted, the facts are taken from the Second Amended Complaint, and are accepted as true for the purposes of this motion. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

searched Boddie and put him in the back of a police car. *Id.* ¶ 14. Sergeant Hodos then yanked Boddie by the handcuffs to bring him further into the police car, injuring his wrist. *Id.* ¶¶ 15, 18. NYPD Defendants then transported Boddie to the precinct where he was processed. *Id.* ¶ 17.

At the precinct, Boddie complained of pain in his wrists, but instead of ensuring that Boddie received medical care, Officer Casey forced him to sign a form waiving medical attention and gave him a ticket for permitting an open flame. *Id.* ¶ 18. Boddie was arraigned on charges of Resisting Arrest and Disorderly Conduct, and the case was adjourned in contemplation of dismissal. *Id.* ¶¶ 19-20. After he was released, Boddie sought medical treatment for his wrists at Bronx-Lebanon Hospital. *Id.* ¶ 21.

On June 3, 2015, Boddie filed this lawsuit. ECF No. 1. He filed an amended complaint on November 24, 2015, and a second amended complaint ("SAC") on February 9, 2016. ECF Nos. 7 and 30. He brings claims for unlawful stop and search, false arrest, excessive force, and deliberate indifference to medical needs against NYPD Defendants, and a claim for municipal liability against the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). In support of his *Monell* claim, he included the October 2015 report titled "Police Use of Force in New York City: Findings and Recommendations on NYPD's Policies and Practices" by the Office of the Inspector General for the NYPD as an exhibit to the SAC. ECF No. 30-1 (the "Report"). Defendants now move for partial judgment on the pleadings, seeking dismissal of Boddie's *Monell* claim.

## II. Standard of Review

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the Court employs the same standards as those applicable to a motion to dismiss under Rule 12(b)(6). *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). Thus, the Court "will accept all factual

allegations in the complaint as true and draw all reasonable inferences in [plaintiff's] favor." *Id.* (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to be plausible, the plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id.* A complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

"On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).

**III. Discussion**

A municipality is not vicariously liable for its employees' actions under § 1983. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell*, 436 U.S. at 691). Municipalities are, however, liable for "their *own* illegal acts." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). Plaintiffs seeking to hold a municipality liable under § 1983 must plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 425 (S.D.N.Y. 2013) (citing *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)).

A plaintiff may satisfy the first of those prongs in one of four ways: by alleging the existence of (1) a formal policy, (2) action taken or decisions made by policymakers that caused the violation of plaintiff's rights, (3) a practice so persistent and widespread that it constitutes a "custom or

3

usage," or (4) a failure to properly train or supervise municipal employees. *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (citations omitted).

Boddie's theories of *Monell* liability fall into the final category. He alleges that the City was aware of "the regular use of excessive force and false arrests by its police officers," but that it failed to discipline officers for their actions, and that it failed to sufficiently train NYPD officers in de-escalation. Pl.'s Br. 5; SAC ¶¶ 43-47, 51.[2] For purposes of this motion only, the Court will assume that the individual NYPD Defendants violated Boddie's constitutional rights—but even with that assumption, Boddie's *Monell* claim fails because he has not pleaded facts that plausibly allege the existence of an official policy.

### A. Failure to Discipline

The Second Circuit has held that "municipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*." *Bastista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (collecting cases). Such inaction rises to the level of a municipal policy "where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 737 (1989)).

Boddie alleges that "the Department's failure to discipline its officers that use excessive force" "emboldened NYPD Officer Hodos to use unreasonable and excessive force" against him.

---

[2] Although Boddie does not make the argument in his brief, the Court finds that to the extent that the complaint alleges *Monell* liability due to a custom or practice of using excessive force—the third means of pleading an official policy—it similarly fails. "[T]he mere assertion that a municipality has such a custom or practice is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995). In this case, the Report attached to the complaint examined "207 allegations of force in 179 cases between 2010 and 2014," which the Report itself characterizes as "a notably modest number, given the size of NYPD." Report at 1. The facts alleged by Boddie—consisting only of the allegations surrounding the March 25, 2015 incident and the Report—are insufficient to support a "custom or practice" *Monell* claim.

4

SAC ¶ 47. Boddie further alleges that the City "has been aware for some time" that "a disturbing number of the City's police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obvious illegal actions of their fellow officers." SAC ¶ 53. These are precisely the types of conclusory allegation that, without factual support, must be dismissed. Setting aside the fact that plaintiff's attorney appears to have inserted boilerplate language into this complaint—there are no accusations regarding police bringing false charges against citizens, perjuring themselves, or failing to intervene in this case—the complaint does not include the concrete facts necessary to support a plausible inference that Sergeant Hodos's actions were taken pursuant to municipal policy.

As an initial matter, Boddie relies entirely on the October 2015 Report for the proposition that the City was on notice of the alleged pattern of misconduct. But the Report cannot support his claim, because the incident at issue in this case took place six months before the publication of the report, in March 2015. Even if one were to read the Report, as Boddie does, to warn that NYPD's failure to impose discipline causes the use of excessive force, there are no facts alleging that the City was deliberately indifferent to this problem before it was made aware of it in October 2015.

In addition, Boddie's conclusory statement that the March 25, 2015 incident was "not an isolated incident," without alleging other similar occasions, fails as a matter of law.[3] *See Sorlucco v.*

---

[3] The Report does describe several specific incidents, which, while undated, must have taken place between 2010 and 2014. Report at 29-33. None of these incidents, however, are similar to the events described in Boddie's complaint—in which he says he was arrested, and while handcuffed and not resisting or struggling, he was subjected to excessive force. Because Boddie broadly states that NYPD officers use "excessive force" without further specification, he takes on a heavy burden to prove a pattern of general violations. *Rasmussen v. City of New York*, 766 F. Supp. 2d, 399, 408 (E.D.N.Y. 2011).

> It is one thing to assert, for example, that a municipality is training its officers to use a particular choke-hold that carries a high risk of asphyxiation not used by other municipalities, or that senior management is failing to train its officers to refrain from using that choke-hold even though they know their officers are frequently using it. It is quite another matter to allege broadly that as a general practice, a municipality fails to give 'adequate' remediation training for officers' violations of the full panoply of constitutional rights, for which the appropriate remedial action might vary infinitely with

5

*New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992) ("A municipal agency may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees.") (citing *Monell*, 436 U.S. at 694); *see also Jones v. Town of East Haven*, 691 F.3d, 72, 85 (2d Cir. 2012) (holding that two or three instances "fell far short of showing a policy, custom, or usage" and "showed no instances in which supervisors were aware of abuse"). In addition to failing to allege a pattern of use of excessive force, Boddie has failed to allege "persistent" failure to discipline officers for using excessive force during the relevant time period. The Report states that the number of incidents in which a complaint of excessive force was substantiated and the offending officer was not disciplined was "trending downward" in 2014 and 2015 and that given the small number of data points OIG-NYPD would continue to monitor the issue. Report at 4. That is not enough to allege an "unlawful municipal policy" within the meaning of *Monell*.

Finally, Boddie does not argue—nor could he on the facts alleged—that the March 25, 2015 incident falls within the "narrow range of circumstances" in which it is not necessary to plead a pattern of similar violations to show deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 63 (2011). This is not the unusual case in which a single constitutional violation can be said to establish an official policy. *See id.*

The SAC fails to state a claim under a failure to discipline theory. The Court will turn next to Boddie's argument that the City caused his injury due to a failure to train NYPD officers.

**B. Failure to Train**

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). In order for municipal

---

the distinct facts of any police encounter.

*Id.* The five incidents described in the Report support the proposition that there were occasional uses of excessive force by NYPD over a five-year period. They do not provide the needed factual support for Boddie's proposition that the City is deliberately indifferent to a pattern of excessive or unjustified use of force by its officers.

liability to attach under Section 1983, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (internal quotation marks and citation omitted).

To allege deliberate indifference in the context of a failure-to-train claim, a plaintiff must plead facts giving rise to a plausible inference that (1) the municipality knows "to a moral certainty" that its employees will confront a given situation, (2) either the situation presents the employees with a difficult choice of the sort that training will make less difficult, or there is a history of employees mishandling the situation, and (3) the wrong choice by the employee will frequently cause a constitutional deprivation. *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992).

Here, Boddie alleges that the City's failure "to instruct its officers to de-escalate encounters" "led directly" to Officer Hodos's "decision to use unreasonable force" against him when he was already handcuffed. SAC ¶ 51. Boddie's only factual allegation in support of this conclusion is that the Report found that there is "too little focus on de-escalation" in NYPD training, as it comprises "less than one percent of the curriculum." *Id.*

"[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (internal quotation marks and citation omitted). Boddie's allegations are insufficient to state a claim upon which relief can be granted. As discussed above, the only facts alleged in support of Boddie's failure-to-train claim come from the Report, which postdates Boddie's arrest by six months. "[W]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

7

Even assuming that existing de-escalation training is deficient, Boddie does not plausibly allege that the City was on actual or constructive notice that its de-escalation training was lacking at the time he was arrested. The Report recommending additional training was published months after Boddie's arrest, and the handful of specific incidents described in the Report are not similar enough to the alleged violation at issue here to plead that the City was deliberately indifferent to a pattern of constitutional violations. *See Pluma v. City of New York*, No. 13-cv-2017-LAP, 2015 WL 1623828, at *12 (S.D.N.Y. Mar. 31, 2015) (holding that a "handful of dissimilar incidents occurring over the course of more than a decade is too sparse to put the City on notice that the NYPD's training program produces officers who are likely to commit constitutional violations through their deployment of pepper spray"); *see also Marom v. City of New York*, No. 15-cv-2017-PKC, 2016 WL 916424, at *22 (S.D.N.Y. Mar. 7, 2016) (holding that a study recommending further investigation of previously alleged incidents of force was insufficient to state a failure-to-train claim).

Furthermore, "showing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability." *Connick*, 563 U.S. 68. A report recommending improvements to an existing training program—in other words, an acknowledgment that the existing training program is something less than perfect—does not, without more, give rise to a plausible inference of deliberate indifference on the part of the City. *See Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007) ("A training program must be quite deficient in order for the deliberate indifference standard to be met: the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing.") (quoting *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 27 (1st Cir. 2005)). The City should be encouraged to critically examine its training programs, and, absent a known pattern of constitutional violations, the law does not punish it with unexpected liability when it seeks to improve itself.

Lastly, Boddie fails to connect shortcomings in existing *de-escalation* training with the alleged use of excessive force in this case.[4] At the time that Sergeant Hodos yanked Boddie's handcuffs, injuring him, Boddie had been arrested and placed inside a police vehicle. There was no ongoing situation between citizens and the police to be diffused, and there is nothing in the complaint that suggests that existing, deficient de-escalation training caused this use of force, or, conversely, that any de-escalation training, no matter how thorough, would have prevented it.

**IV. Conclusion**

For the foregoing reasons, the Defendants' motion to dismiss is GRANTED, and Plaintiff's *Monell* claim is dismissed without prejudice.

SO ORDERED.

Dated: April 13, 2016
New York, New York

GREGORY H. WOODS
United States District Judge

---

[4] At the motion to dismiss stage, plaintiffs "need only plead that the city's failure to train caused the constitutional violation" because it is unlikely that the plaintiff will have detailed information about municipal training programs. *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004). Thus, the Court comments on the disconnect between de-escalation training and this alleged incident of post-arrest use of excessive force because they are logically distinct, not because Boddie must plead the specific defects in municipal training at this stage.